JOURNAL ENTRY AND OPINION
{¶ 1} Terry Clayton appeals from a judgment of the common pleas court classifying him as a sexual predator. On appeal, he assigns the following errors for our review:
 {¶ 2} "I. The evidence was insufficient, as a matter of law, to prove `by clear and convincing evidence' that appellant `is likely to engage in the future in one or more sexually oriented offenses.'"
 {¶ 3} "II. The trial court erred in determining that the appellant was a sexual predator without considering or placing upon the record any factors codified at [R.C. 2950.09(B)(3)]."
 {¶ 4} Having reviewed the record and pertinent law, we affirm the judgment of the court. The apposite facts follow.
 {¶ 5} The record shows Clayton pled guilty to one count of rape on December 14, 1984 and was sentenced to 10 to 20 years in prison. On July 17, 2001, the trial court held a hearing pursuant to R.C. 2950.09(C) to determine whether Clayton should be classified as a sexual predator.
 {¶ 6} At the sexual predator classification hearing, the prosecutor represented to the court that Clayton's conviction and imprisonment stemmed from an incident where he grabbed a 15-year-old girl from behind with great force as she walked through a park, shoved her face into the ground, and raped her vaginally and anally. The prosecutor also stated that Clayton committed this offense while on probation for a sexual battery conviction involving a 17-year-old girl.
 {¶ 7} In addition, the prosecutor proffered the following evidence: (1) a journal entry of Clayton's rape conviction, (2) his plea of guilt for the sexual battery charge, (3) the victim's statement in the sexual battery case, (4) a police report of the rape case, (5) the victim's statement in the rape case, and (6) an Institution Summary Report, which listed over 10 rule infractions committed by Clayton while in prison, which included an incident where Clayton engaged in oral sex with another inmate in violation of the prison rules.
 {¶ 8} Subsequently, the court journalized an entry adjudicating Clayton to be a sexual predator.
 {¶ 9} Clayton's two assigned errors are related and we discuss them jointly. He challenges his sexual predator classification on the grounds that the evidence was insufficient to prove he is likely to engage in the future in one or more sexually oriented offenses and that the court failed to consider or place upon the record the requisite statutory factors.
 {¶ 10} The Ohio Revised Code defines a sexual predator as "a person who has been convicted of or pleaded guilty to committing a sexually-oriented offense and is likely to engage in the future in one or more sexually-oriented offenses."[1]
 {¶ 11} In prescribing a framework for a sexual predator determination, R.C. 2950.09(B)(3) states:
 {¶ 12} "In making a determination under divisions (B)(1) and (4) of this section as to whether an offender or delinquent child is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 13} "(a) The offender's or delinquent child's age;
 {¶ 14} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 15} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 16} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 17} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 18} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 19} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 20} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 21} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 22} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 23} Furthermore, at a sexual predator classification hearing, the burden of proof is on the state to show by clear and convincing evidence that the offender has been convicted of a sexually oriented offense and that the offender is likely to engage in the future in one or more sexually oriented offenses.[2]
 {¶ 24} "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."[3]
 {¶ 25} Moreover, in a sexual predator determination, a trial court's duty is to "consider the statutory factors listed in R.C. [2950.09(B)(3]), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism."[4]
 {¶ 26} In State v. Thompson,[5] the court emphasized that the factors set forth by the legislature in R.C. 2950.09(B)(3) are to be used as guidelines to assist judges in determining whether a defendant who has committed a sexually oriented offense is a sexual predator. The court inThompson also reiterated the standard set forth in Eppinger regarding the necessity for a trial court to consider the statutory factors and discuss on the record the particular evidence and factors.
 {¶ 27} Interpreting Eppinger and Thompson, this court has recognized that a trial court is not required to tally up or list the statutory factors in any particular fashion when engaging in a R.C. 2950.09(B)(3) discussion.[6]
 {¶ 28} Here, the hearing transcript contains the following colloquy between the court and Clayton:
 {¶ 29} "THE COURT: I have some questions for your client.
 {¶ 30} "DEFENSE COUNSEL: Please.
 {¶ 31} "THE COURT: Consensual or not, does the prison permit sex between inmates?
 {¶ 32} "THE DEFENDANT: No, ma'am.
 {¶ 33} "THE COURT: So that's against the rules?
 {¶ 34} "THE DEFENDANT: Yes, ma'am.
 {¶ 35} "THE DEFENDANT: And you knew that?
 {¶ 36} "THE DEFENDANT: Yes, ma'am.
 {¶ 37} "THE COURT: Can I see the rest of those documents?
 {¶ 38} "This is a psychological report done at the institution in March of 1996 by Nancy Steele, Ph.D. Do you remember having that interview?
 {¶ 39} "THE DEFENDANT: Yes.
 {¶ 40} "THE COURT: Okay. I want you to tell me what you think about her saying this: "As past behavior is the best predicator of future behavior, additional aggressive behavior is anticipated. His ability to successfully complete parole would be considered poor.
 {¶ 41} "THE DEFENDANT: Well, I believe her statement was based on [sic] because as soon as I walked through the door, she was on me, you know, talking very nasty and, which I understood because of my case and —
 {¶ 42} "THE COURT: What do you mean by that?
 {¶ 43} "THE DEFENDANT: What, my case?
 {¶ 44} "THE COURT: Yes —
 {¶ 45} "THE DEFENDANT: Well, rape and her being a female. I mean, when I first walked through the door, she was like very nasty to me.
 {¶ 46} "THE COURT: Okay. Now, what do you think about this? This is an interoffice communication from Vitoria Reeder, MA, psychology assistant. It's dated April 12th, 1993. She's talking about your participation in the sex offender program also.
 {¶ 47} "THE DEFENDANT: Okay.
 {¶ 48} "THE COURT: And she says, `He has never really addressed the seriousness of his sexually aggressive, acting-out behavior in the sense that I would consider necessary to warrant a prognosis which is at all optimistic.'
 {¶ 49} "What do you think about that opinion?
 {¶ 50} "THE DEFENDANT: Well, I do respect her opinion, but I know — I know my life, you know. I know for myself I don't want this for the rest of my life, being incarcerated. You know, basically the class, like I said, was for those who want to take it upon themselves to take it seriously. You know, there's a lot of guys in there who take it as a joke —
 {¶ 51} "THE COURT: I'm not talking about them. I'm asking you about you. The reason I'm pointing this out, I'm not really to attack you, but this is a report from `93 and one from `96 that have sort of the same opinion. There is a three-year gap where you're presumably doing all these things, taking classes." (Tr. 28-31.)
 {¶ 52} This exchange reflects the particular evidence and factors that the court took into consideration in its decision to classify Clayton as a sexual predator. The court mentioned Clayton's commission of a rule infraction of a sexual nature while in prison. It also reviewed a 1993 institutional communication where a psychologist assistant stated that Clayton never addressed the seriousness of his sexually aggressive behavior. The court in addition discussed a 1996 psychological report where a psychologist concluded additional aggressive behavior by Clayton was anticipated because "past behavior is the best indicator of future behavior." The court specifically commented on Clayton's lack of progress in the three years between the two psychological evaluations despite his participation in a sex offender program.
 {¶ 53} Moreover, the record contains evidence presented for the court's consideration relating to several other R.C. 2950.09(B)(3) factors. They include the facts that Clayton committed the underlying rape offense while on probation for sexual battery; his victims were 17 and 15 at the time of the offenses; and he displayed cruelty when he grabbed the 15-year-old victim from behind with great force and shoved her face into the ground before raping her vaginally and anally.
 {¶ 54} Because the trial court is under no obligation to list the R.C. 2950.09(B)(3) factors in any particular fashion, the court's failure to tally up the statutory factors here does not render its determination defective, given that the record contains clear and convincing evidence to support it and given that the record sufficiently reflects the court considered the factors pertinent to the facts of this case.
 {¶ 55} On the basis of the foregoing, we overrule Clayton's assigned errors and affirm the judgment of the court.
JAMES J. SWEENEY, J., and ANTHONY O. CALABRESE, JR., CONCUR.
[1] R.C. 2950.01(E); State v. Winchester (2001), 145 Ohio App.3d 92.
[2] State v. Eppinger (2001), 91 Ohio St.3d 158.
[3] Id., citing Cross v. Ledford (1954), 161 Ohio St. 469, 477.
[4] (Emphasis added.) Id. at 166.
[5] (2001), 92 Ohio St.3d 584.
[6] See, State v. Jones, Cuyahoga App. No. 79780, 2002-Ohio-1273, citing State v. Burke (Sept. 21, 2000), Franklin App. No. CA-00AP-54.